# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **Bopda** | * |
| Plaintiff, | * |
| v. | *   Civil No.   **PJM 22-2889** |
| **Comcast of the District, LLC** [1] | * |
| Defendant. | * |

## MEMORANDUM OPINION

Pro se Plaintiff Yannick Bopda ("Bopda") has sued his former employer Comcast Cable Communications Management, LLC ("Comcast"), alleging sexual harassment, hostile work environment, and discrimination based on sex and national origin in violation of Montgomery County Code § 27-19 and § 27-22. Comcast has filed a Motion to Compel Arbitration and Dismiss for Improper Venue (ECF No. 21) and a Motion for Extension of Time to File an Answer or Otherwise Respond to Plaintiff's Complaint (ECF No. 7). Bopda has filed an Emergency Motion for Remand to Circuit Court (ECF No. 8), an Updated Emergency Motion to Remand to Circuit Court (ECF No. 9), a Motion to Deny and Dismiss Defendant (ECF No. 10), a Motion to Sustain Emergency Motion for Remand Back to Circuit Court (ECF No. 24), and a Motion Objected Defendant Request for Alternative Arbitration to Resolve Dispute Outside of Court Proceedings ("Bopda's Response") (ECF No. 26). The parties' submissions have been reviewed, and the Court finds that no hearing is necessary. For the following reasons, Defendant's Motion to Compel

---

[1] Although Plaintiff named as Defendant "Comcast of the District, LLC" in his Complaint, Comcast Cable Communications Management, LLC, the correct name of Plaintiff's former employer, has responded. *See* ECF No. 7 at n.1.

1

Arbitration is **GRANTED**. The other open motions are **MOOT**. Since all of Bopda's claims are subject to arbitration, the case will be **DISMISSED** without prejudice.

## I. BACKGROUND

Bopda, an African male,[2] began working for Comcast on October 18, 2021, with the job title "[R]epresentative 2." Compl. at 2. He alleges that from the first day of his employment, he was subjected to acts of sexual harassment and discrimination based on national origin and sex by the assistant manager, a female, Keiron Robinson. *Id.* at 2. Bopda further alleges that Comcast's "non-discrimination, non-harassment, anti-retaliation, reasonable accommodation and open-door policies" are not effective and that the company should be held liable for its failure to protect him *Id.* at 5.

On October 7, 2021, before starting his position with Comcast, Bopda electronically signed an offer letter (the "Offer Letter"), which described, among other things, Comcast's dispute resolution program for its employees, known as Comcast Solutions. ECF No. 21-1 at 3–4. The Offer Letter explained that Comcast Solutions "provides a three-step process (facilitation, mediation and binding arbitration) for resolving a variety of workplace legal issues should there be any that arise between [the employee] and the Company during or after . . . employment.'" ECF No. 21, Ex. A at 4. It specifically advised Bopda that Comcast Solutions:

> [A]ffects the legal rights of both [the employee] and the Company (including a waiver of the right to bring a civil action in federal or state court or before a civil judge or jury, as well as a waiver of the right to bring or participate in a class action, collective action or representative action).

*Id.* The Offer Letter also referenced the Comcast Solutions Program Guide, *id.*, which explained Comcast Solutions in further detail and again warned Bopda that: "No Covered Claims between

---

[2] Bopda does not indicate what his national origin is, suggesting only that his alleged female harasser said, "your African people always think you are better than us, you come here and take our student loans from us and you have to go back where you come from." Compl. at 2.

2

the Participating Employee and the Company may be brought, pursued or litigated, by either the Company or the Participating Employee, in a federal, state or local court of law or equity." ECF No. 21, Ex. B at 4. Like the Offer Letter, Bopda electronically signed the Program Guide on October 7, 2021. ECF No. 21-1 at 5.

On September 19, 2022,[3] Bopda filed a Complaint against Comcast in the Circuit Court for Montgomery County alleging hostile work environment based on sex (Count I) and sexual harassment (Count IV) in violation of Montgomery County Code § 27-19 and discrimination based on national origin in violation of § 27-19 (Count II) and § 27-22 (Count III). *See* ECF No. 1 at 1. On November 7, 2022, Comcast removed the case to this Court based on diversity jurisdiction. ECF No. 1, Ex. A at 2. Then on November 21, 2022, it moved to compel arbitration and to dismiss the present action under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, et seq., and Federal Rule of Civil Procedure 12(b)(3), arguing that Plaintiff's claims are subject to mandatory, binding arbitration pursuant to the agreement Bopda and Comcast entered into when Bopda signed his offer of employment. ECF No. 21 at 1. Bopda presents no arguments denying that his agreement with Comcast is valid or binding, nor that the claims he makes here fall outside the scope of the agreement. He argues instead that Comcast's attorneys are trying to inflict delays and evade proper justice and that, based on a recent addendum to the FAA, the Court cannot compel arbitration as to Bopda's claim of sexual harassment. ECF No. 26 at 1–2.

## II. APPLICABLE LAW

Congress enacted the FAA to "reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson, Lane Corp.*, 500 U.S. 20, 24 (1991). It provides that written

---

[3] Bopda no longer worked for Comcast at this point. ECF No. 21-1 at 3.

3

agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable," 9 U.S.C. § 2, and "elevates the arbitration of claims as a favored alternative to litigation when the parties agree in writing to arbitration." *Stone v. Wells Fargo Bank, N.A.*, 361 F. Supp. 3d 539, 546 (D. Md. 2019).

In deciding a motion to compel arbitration, district courts "engage in a limited review to ensure that the dispute is arbitrable." *Hooters v. Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999) (internal quotations and citations omitted). That is, district courts must decide (1) "that a valid agreement to arbitrate exists between the parties," and (2) "that the specific dispute falls within the substantive scope of that agreement." *Id.*; *see also Muriithi v. Shuttle Express, Inc.*, 712 F.3d 173, 179 (4th Cir. 2013). As to the first inquiry, courts generally apply state contract law to determine whether the parties have validly formed an agreement to arbitrate. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 501 (4th Cir. 2002). As to the second inquiry, any "uncertainty regarding the scope of arbitrable issues agreed to by the parties must be resolved in favor of arbitration." *Muriithi*, 712 F.3d at 179.

Finally, "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice of Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001); *see also Taylor v. Santander Consumer USA, Inc.*, No. DKC 15-0442, 2015 WL 5178018, at *7 (D. Md. Sept. 3, 2015).

### III. ANALYSIS

As the Court now explains, it finds that Bopda and Comcast entered into a valid agreement to arbitrate, that the agreement to arbitrate governs the claims in this dispute, and that the case should be dismissed.

4

### A. The Validity of the Agreement to Arbitrate

The first issue is whether the parties in fact entered into an agreement to arbitrate. Under Maryland law, an arbitration agreement must be a "valid contract" to be binding and enforceable. *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005) (citing *Cheek v. United Healthcare of Mid-Atl., Inc.*, 835 A.2d 656, 661 (Md. 2003)). "[T]he formation of a contract requires mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration." *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 777 (4th Cir. 2013) (quoting *CTI/DC, Inc. v. Selective Ins. Co. of Am.*, 392 F.3d 114, 123 (4th Cir. 2004)).

Here, Bopda clearly signed the documents binding him to resolve disputes by arbitration, showing his assent and demonstrating consideration. *See O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 275 (4th Cir. 1997) (finding that "[a] mutual promise to arbitrate constitutes sufficient consideration for [an] arbitration agreement") (citation omitted). The terms of the agreement to arbitrate, laid out above, are clear and definite. As such, the parties entered into a valid and enforceable agreement to arbitrate; Bopda does not dispute this.

### B. The Scope of the Agreement to Arbitrate

Having concluded that Bopda entered into a valid and enforceable agreement to arbitrate with Comcast, the Court considers whether Bopda's claims against Comcast fall within the scope of that agreement. *See Murithi*, 712 F.3d at 179.

The Program Guide that Bopda signed provided a non-exhaustive list of the types of claims that are subject to binding arbitration, including "[u]nlawful discrimination or harassment on the basis of race, gender, age, disability, religion, pregnancy, national origin or any other category or characteristic protected by federal, state or local law[.]" ECF No. 21, Ex B. at 2. Bopda's alleged claims for hostile work environment based on sex, national origin discrimination, and sexual

harassment therefore fall squarely within the ambit of Comcast Solutions. Again, Bopda does not deny this.

## C. Sexual Harassment Claims under the FAA

Bopda argues that under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, 9 U.S.C. § 402 ("EFAA"), a recent addendum to the FAA, the Court cannot compel arbitration as to his claim of sexual harassment. *See* ECF No. 26 at 1–2.[4]

The EFAA, however, does not apply retroactively — it applies only to claims that accrued on or after March 3, 2022, the day President Biden signed the EFAA into law. *See* Pub. L. 117–90 § 3, 136 Stat. 26, 28 (2022) ("This Act, and the amendments made by this Act, shall apply with respect to any dispute or claim that arises or accrues on or after the date of enactment of this Act."); *see also Johnson v. Everyrealm, Inc.*, No. 22 Civ. 6669 (PAE), 2023 WL 2216173, at *10 (S.D.N.Y. Feb. 24, 2023) (collecting cases). Bopda's alleged sex-based harassment claim, only one of many claims he brings in his Complaint, accrued before March 2022 as his employment with Comcast ran from October through December 2021. *See* ECF 21-1 at 3; *see also, e.g., Walters v. Starbucks Corp.*, 623 F. Supp. 3d 333, *3 (S.D.N.Y. Aug. 25, 2022) (compelling arbitration where plaintiff's claim accrued before enactment but was filed after enactment and collecting cases doing same). Because Bopda's claims accrued before passage of the EFAA and because the EFAA does not apply retroactively, the addendum is immaterial to Comcast's Motion to Compel Arbitration and Bopda's objection to arbitration based on the EFAA fails.

---

[4] The Addendum states that: "Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute." 9 U.S.C. § 402(a).

**D. Dismissal of the Case**

As Bopda and Comcast entered into a valid agreement to arbitrate and all of Bopda's claims fall within the scope of that agreement, the Court finds that all of Bopda's claims must be arbitrated. It will therefore dismiss the suit. *See Taylor v. Santander Consumer USA, Inc.*, No. DKC 15-0442, 2015 WL 5178018, at *7 (D. Md. Sept. 3, 2015) (stating that dismissal is appropriate where "a court rules that all of a plaintiff's claims must be arbitrated") (quoting *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 856 (D. Md. 2013)).

## IV. CONCLUSION

For the foregoing reasons, Comcast's Motion to Compel Arbitration and Dismiss for Improper Venue (ECF No. 21) is **GRANTED**. Comcast's Motion for Extension of Time to File an Answer or Otherwise Respond to Plaintiff's Complaint (ECF No. 7) and Bopda's Emergency Motion for Remand to Circuit Court (ECF No. 8), Updated Emergency Motion to Remand to Circuit Court (ECF No. 9), Motion to Deny and Dismiss Defendant (ECF No. 10), and Motion to Sustain Emergency Motion for Remand Back to Circuit Court (ECF No. 24) are **MOOT**. This case is **DISMISSED WITHOUT PREJUDICE SUBJECT TO ARBITRATION**. The Clerk of Court shall **CLOSE** the case.

A separate Order will **ISSUE**.

September 27, 2023

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

7